## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHANIEL LEE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION, et al. | : | NO. 09-2825 |

### MEMORANDUM RE: HABEAS CORPUS PETITION

**Baylson, J.**                                                    **November   , 2010**

### I.    Introduction

On June 24, 2009, petitioner Nathaniel Lee filed a pro se Petition for Writ of Habeas

Corpus under 28 U.S.C. § 2254, naming as respondent the Pennsylvania Board of Probation and

raising four grounds for relief (Doc. No. 1). This Court referred the matter to Magistrate Judge

Arnold C. Rapoport for a Report & Recommendation ("R & R") on the merits (Doc. No. 3), and

ordered that the District Attorney of Philadelphia County is the proper Respondent in this matter

because Petitioner's claims do not allege an error of the Parole Board (Doc. No. 3). The

Government responded to Lee's petition on January 12, 2010 (Doc. No. 8).

On March 16, 2010, Magistrate Judge Rapoport filed his R & R, which recommended

that the petition be denied (Doc. No. 10). On April 1, 2010, Lee timely filed objections to the R

& R (Doc. No. 12), and the Government responded on May 4, 2010 (Doc. No. 13). Upon

independent and thorough review, and for the reasons stated below, the Court will adopt the R &

R and deny the Petition for Habeas Corpus.

### II.   Factual and Procedural Background

On October 16, 1990, following a non-jury trial, the Honorable Mark I. Bernstein of the

Philadelphia Court of Common Pleas convicted Lee of rape, involuntary deviate sexual intercourse ("IDSI"), aggravated assault, simple assault, false imprisonment, indecent exposure, terroristic threats, and indecent assault. (Respondent's Exhibit A.)   Judge Bernstein outlined the facts of the case in ruling upon Lee's 2002 petition for post-conviction DNA relief as follows:

> The evidence presented at trial demonstrated that on April 14, 1990, at approximately 4 o'clock in the morning, . . . . [t]he defendant forced open the outer and apartment door. The victim ran to the window and began yelling to a pedestrian on the street below to call the police. The defendant pulled her away from the window as the two struggled, the complainant cut her hand on a machete wielded by the defendant. The fight moved from the bedroom to the living room. When the defendant saw that the complainant was bleeding, he offered to take her to the hospital. According to the complainant, while still holding the machete, the defendant then ordered the complainant to take off her clothes.

> The complainant testified that the defendant retrieved a quilt from the bedroom, threw it on the floor of the living room, took off his clothes and instructed her to lie down. She testified that the defendant performed oral sex on her, and then forcibly raped her. The defendant, in his testimony, confirmed much of the complainant's testimony but denied that any sexual contact had occurred.

> Both agree that the defendant eventually left the apartment, taking the machete with him. The complainant called the police. When Police Officer Pringle arrived the complainant was hysterical and bleeding. While taking her to the hospital, they saw the defendant on the street. The officer stopped and searched him, recovering the machete. The defendant was arrested.

> The physical evidence presented at trial consisted of the machete taken from the defendant; the brown quilt; the laboratory results from the Johnson Rape Kit of the victim's physical examination at the hospital, including a blood test, saliva test, and swabs taken from the victim's vagina; the victim's panties, and various photos taken at the scene of the crime. The medical testing presented at trial consisted of three swabs, received with the Johnson Rape Kit: one from the vagina, one from the vulvular area and one from the cervical area. All three swabs tested positive for the presence of spermatozoa. Tests to obtain blood groups were also performed but the results of the vaginal sample and vulvular samples were inconclusive and the results of the cervical sample were that no blood group substances were detectable. Stains found on the victim's panties were tested. One stain tested positive for human blood and another, from the crotch area of the panties, tested positive for spermatozoa. Tests performed on the quilt were negative for human blood but seminal stains indicated the presence of spermatozoa.

(PCRA Opinion & Order 4/1/04, Ex. E at unnumbered pp. 5-7.)

On February 28, 1991, the court sentenced Lee to concurrent terms of 5 to 10 years for aggravated assault, 6 ½ to 20 years for rape, and 6 ½ to 20 years for IDSI, to be served consecutively, following a sentence for a prior conviction. (Id.) Lee did not file a timely appeal of his convictions. (Id.)

On January 9, 1997, Lee filed a pro se petition pursuant to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. § 9541 et seq., which was subsequently amended by appointed counsel to assert a claim that trial counsel was ineffective for failing to pursue a requested direct appeal. Commonwealth v. Lee, No. 3417 EDA 1999 (Pa. Super. October 16, 2000) (Table) (Superior Court Direct Appeal Opinion & Docket) (Ex. C at 4.). That proceeding resulted in the reinstatement of Lee's direct appeal rights nunc pro tunc. (Id. at 2.)

On direct appeal, Lee challenged the sufficiency of evidence underlying the aggravated assault conviction and asserted that he was entitled to post-conviction DNA testing. (Id. at 1.) On October 16, 2000, the Pennsylvania Superior Court affirmed Lee's conviction, finding the record to clearly support Lee's aggravated assault conviction and holding the DNA request to have been improperly raised for the first time on direct appeal. (Id. at 1,7,9). Lee sought no further review and, thus, his judgment of conviction became final for purposes of habeas review on November 15, 2000, upon conclusion of the thirty-day period for seeking review by the Pennsylvania Supreme Court. See Pa. R. A. P. 1113.

On January 9, 2002, the Court of Common Pleas docketed Lee's PCRA petition for post-conviction DNA testing pursuant to the Pennsylvania Post-Conviction DNA Testing Act, 42 Pa.

-3-

Cons. Stat. Ann. § 9543.1.[1] (State Court Docket, Ex. A at 8.) Court-appointed counsel filed an amended petition requesting DNA testing on July 12, 2002. (PCRA Court Opinion & Order 4/1/04, Ex. E at 1). The court conducted a hearing on September 25, 2002, and granted Lee's request for DNA testing. (PCRA Hearing Transcript 9/25/02, Ex. D at 11.) The results of DNA testing were released on July 2, 2003, after which Lee filed a "Motion under the Post Conviction Relief Act to Vacate Sentence, Reverse Conviction and Forthwith Release From Custody." (PCRA Court Opinion & Order, 4/1/04, Ex. F at unnumbered p. 3.)

The PCRA court conducted a second hearing on January 27, 2004, at which time Lee requested a new trial only as to the charges of rape, IDSI, indecent assault, and indecent exposure. (PCRA Hearing Transcript 1/27/04, Ex. F at unnumbered p.10-11.) The DNA evidence could only be compared to genetic material on the blanket and the victim's undergarments as the Johnson Rape Kit samples had been destroyed. (Id. at 10.) The DNA test results revealed that the seminal stains on the victim's undergarments did not match Lee's DNA profile, evidence the court determined was "clearly exculpatory" and went "to heart of the only issue contested in the case, whether any rape occurred." (PCRA Court Opinion & Order, 4/1/04, Ex. F at unnumbered p. 8.) On April 1, 2004, the PCRA court granted Lee a new trial as to the rape and IDSI charges only. (Id. at unnumbered pp. 2-3, 6-9.)

On July 27, 2005, Lee's PCRA counsel filed a Motion to Withdraw as Counsel,

---

[1]Pursuant to Pennsylvania law, this second PCRA petition is treated as Lee's first because his direct appeal rights were previously reinstated nunc pro tunc. See Commonwealth v. Lewis, 718 A.2d 1262, 1262 (Pa. Super. 1998).

which was granted. (State Court Docket, Ex. A; 7/27/05 Mot. to Withdraw as Counsel for Def.) Prior to the new trial, Lee's new court-appointed counsel filed a pretrial "Motion to Strike the Aggravated Assault Charge," docketed on December 30, 2005. (Motion to Strike, Ex. G; State Court Docket, Ex. A.) Prior rulings had limited the re-trial to the rape and IDSI charges, Lee had confined his own request for a new trial to his conviction for the sex-related crimes, and the record reflects no ruling on the motion to strike. The court, the Honorable Karen Shreeves-Johns presiding, conducted a new trial before a jury on February 16, 2006, at which time Lee obtained a demurrer on the IDSI count and was acquitted on the rape charge. (State Court Docket, Ex. A.)

On April 20, 2006, the Court of Common Pleas docketed Lee's most recent PCRA petition, which alleged ineffective assistance of PCRA counsel, based on counsel's failure to request a new trial on the aggravated assault and indecent contact charges. (State Court Docket, Ex. A; PCRA Petition, Ex. H ¶ 5, at 3.)[2] The court held Lee's petition to be without merit, finding that "[t]here was a reasonable basis for counsel's failure to request a new trial on the non-sexual assault charges, as the defendant admitted to cutting the victim with a machete during his original trial, and the DNA evidence was not new evidence that could exonerate him of the charges related to physical assault." (Second PCRA Court Opinions 9/6/06 & 3/30/07, Ex. I at 9.) Without reaching the merits, the Pennsylvania Superior Court affirmed the PCRA court's judgment on the grounds that Lee's petition was

---

[2]Lee asserts in his April 20, 2006 PCRA petition that he filed a "PCRA motion on aggravated assault and indecent contact" in 2005, which was not docketed, and "a Habeas Corpus" in 2005, "also not docketed." (PCRA Petition, Ex. H ¶ 7, at 4.)

untimely, as it had been filed more than one year after judgment of conviction became final on or about November 15, 2000. Commonwealth v. Lee, 943 A.2d 316 (Pa. Super. October 22, 2007) (Table) (No. 2840 EDA 2006) (Superior Court Second PCRA Appeal Opinion, Ex. K at 4.) The Pennsylvania Supreme Court denied allocatur on May 28, 2008. Commonwealth v. Lee, 951 A.2d 1162 (Pa. May 28, 2008) (Table) (No. 618 EAL 2007) (Order Denying Allocatur, Ex. L.) Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court.

Lee was released on parole with respect to his aggravated assault conviction on December 12, 2007, and reached his maximum sentence date for that judgment of conviction on January 29, 2010. (Lee Reports, Pa. Board of Probation and Parole & Pa. Department of Corrections, Ex. M.)

On June 23, 2009, Lee filed this pro se petition for habeas corpus relief, which asserted the following claims (1) "actual innocence . . . of all charges," based on the appearance of new DNA evidence; (2) ineffective assistance of PCRA counsel for "failure to defend client[']s right to pursue 'not guilty' on all charges;" (3) "[h]armful prejudice" for "fail[ure] to pursue the rights of the Petition" by refusing "to represent client[']s full claim of innocence;" and (4) "[i]nsufficient evidence," presumably as to Lee's conviction of aggravated assault. (Petition ¶ 12(A)-(B), at 9-10.)

On September 3, 2009, this Court issued an order declaring the District Attorney of Philadelphia County to be the proper respondent in this matter (Doc. No. 3). Magistrate Judge Rapoport filed his R & R on March 16, 2010, recommending that the habeas petition be denied (Doc. No. 10). Lee filed timely objections to the R & R, which challenge

Magistrate Judge Rapoport's conclusions as to the time bar and Lee's claim of ineffective assistance of PCRA counsel (Doc. No. 12).

## III. The Parties' Contentions

### A. Summary of the R & R

The R & R issued by Magistrate Judge Rapoport concluded that Lee's petition was time-barred under 28 U.S.C. § 2244(d) and must be dismissed without an evidentiary hearing or issuance of a certificate of appealability. (R & R at 1.) The R & R further concluded that Lee's claim of ineffectiveness of PCRA counsel is unavailing as "claims related to the post-conviction process cannot state a ground for habeus relief." (Id. at 9.)

#### 1. The AEDPA Period of Limitations

Magistrate Judge Rapoport concluded Lee's petition to be time-barred in its entirety under the statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d). (R & R at 4.) Magistrate Judge Rapoport found that Lee's conviction became final on November 15, 2000, upon the expiration of his time for seeking review of his direct appeal on re-trial before the Pennsylvania Supreme Court and that the AEDPA statute of limitations began to run on that date. (Id. at 5.) Magistrate Judge Rapoport determined that the statute of limitations expired on November 15, 2001, at which time "Lee had no properly filed application for post-conviction relief pending with the state courts to invoke statutory tolling." (Id. at 5). Magistrate Judge Rapoport determined that, despite subsequent state court proceedings, Lee's habeas petition must be regarded as time-barred unless a later "trigger date" could be ascertained, pursuant to § 2244(d)(1)(B) or (D). (Id. at 5). While recognizing that the events

-7-

underlying Lee's claim did not arise until the proceedings surrounding his first PCRA petition, Magistrate Judge Rapoport perceived no reason why Lee "did not seek to vindicate his rights by way of the PCRA process until after his federal habeas limitation period had already expired." (Id. at 6.) Moreover, Magistrate Judge Rapoport concluded the DNA results obtained through the PCRA process not to bear on Lee's conviction for aggravated assault and, thus, Lee could not argue that he had discovered a factual predicate previously unknown to him. (Id.)

Magistrate Judge Rapoport also concluded that neither statutory nor equitable tolling were available to Lee. First, having determined that Lee had failed to file a PCRA petition within one year of the final judgment of conviction, pursuant to 28 U.S.C. § 2244(d)(2), the judge found Lee's subsequent PCRA petitions could not toll the running of the one-year period. (Id. at 7-8)

Second, as to equitable tolling, Magistrate Judge Rapoport found that Lee had not pursued his claim diligently. Bearing on this conclusion were the facts that Lee had (1) failed to file a direct appeal of his conviction in 1990 and (2) waited fourteen months to file a PCRA petition subsequent to his nunc pro tunc appeal, despite a determination by the Superior Court that Lee's only recourse would be to use the PCRA procedure to petition the court to order DNA testing. (Id. at 7-8.) Magistrate Judge Rapoport also briefly noted that he could "discern no argument that Lee could make to show that some extraordinary circumstance stood in the way of his asserting his habeas petition any sooner." (Id. at 8.)

## 2. Ineffective Assistance of PCRA Counsel

Despite determining Lee's entire petition to be time-barred, Magistrate Judge Rapoport addressed Lee's claim of ineffective assistance of PCRA counsel. Relying on the "well settled [proposition] that there is no constitutional obligation on the states to provide post-conviction proceedings at all," (id. at 8.), Magistrate Judge Rapoport concluded that Lee's claim of ineffective assistance of PCRA counsel did not state a ground for habeas relief and, thus, his petition "could not succeed even if it were timely." (Id. at 9.)

## B. Lee's Objections

### 1. The AEDPA Period of Limitations

Lee does not provide any rationale for discounting Magistrate Judge Rapoport's conclusions either that Lee's petition was filed after the statute of limitations or in favor of applying statutory tolling. Instead, Lee appears to argue for application of equitable tolling. Lee contends the following: (1) that his lawyer failed to pursue direct appeal after the final judgment of conviction in 1990 and, as a result, Lee was able to restore his appeal rights through a PCRA petition claiming ineffective assistance of counsel; (2) that he has submitted a "long trail of petitions," the record of which has been "lost by authorities at the county correctional facility" during his re-trial; (3) that he had filed "numerous writs which were returned to him undocketed by the courts;" (4) that, in particular, a PCRA petition filed by Lee in February 2005 was never docketed, requiring him to file another in 2006. (Objections at 1-2.) While not explicitly stating so, Lee presumably asserts these contentions to refute Magistrate Judge Rapoport's conclusions that Lee has not pursued his claim diligently and that no extraordinary circumstances exist that prevented timely filing

-9-

of his habeas petition.

## 2. Ineffective Assistance of PCRA Counsel

Lee further contends that the DNA evidence that provided the basis for altering the rape and IDSI verdicts "cast serious doubts upon the credibility of his accuser and her account of what transpired during the night of the alleged assault," requiring a new trial on the aggravated assault charge. (Objections at 2-3.) Lee contends that his PCRA counsel neglected his duty when he refused to seek a re-trial on all charges, rather than just the sex-related crimes. (Objections at 3.) Lee contends that PCRA counsel denied Lee his "constitutional right to assert his innocence at all levels." (Id.) While offering no specific facts to support this assertion, Lee further implies that PCRA counsel did not "properly protect[ ] and preserv[e]" Lee's rights and privileges. (Objections at 4.)

## IV. Legal Standards

Pursuant to AEDPA, a federal court is precluded from granting habeas relief on any claim decided in a state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." Williams v. Taylor, 529 U.S. 362, 404-405 (2000) (citing 28 U.S.C. § 2254(d)(1)); Fountain v. Kyler, 420 F.3d 267, 272-273 (3d Cir. 2005).

In ruling on objections to the R & R of a United States Magistrate Judge, this Court reviews de novo only those R & R findings to which a petitioner specifically objects. 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72. When reviewing documents filed pro se, a court must keep in mind that "[a] document filed pro se is 'to be liberally construed.'"

-10-

Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## V.    Discussion

### A.    AEDPA Period of Limitations

This Court concurs with Magistrate Judge Rapoport's conclusion that Lee's habeas petition is time-barred under AEDPA. AEDPA "prescribes a one-year statute of limitations within which a state prisoner may file a federal habeas petition." 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Section 2244(d)(2) of AEDPA allows for tolling of the statute of limitations, providing that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Lee asserts no facts to contradict the finding of Magistrate Judge Rapoport that

Lee's first PCRA petition was filed almost two months after the close of the one-year limitations period. On October 16, 2000, the Superior Court affirmed Lee's conviction of aggravated assault on appeal nunc pro tunc. See Lee, No. 3417 EDA 1999 (Ex. C at 4.). As Lee pursued no further appeal, that judgment of conviction became final on November 15, 2000. See Pa. R. A. P. 1113. Lee's first PCRA petition filed after the conclusion of the appeal nunc pro tunc was docketed on January 9, 2002, almost two months after the AEDPA statute of limitations had run. (State Court Docket, Ex. A at 8.) Lee similarly fails to offer any statutory basis upon which to toll the limitations period. While Lee did fill two PCRA petitions subsequent to conclusion of the appeal nunc pro tunc that the Court of Common Pleas treated as "properly filed," the AEDPA clock had already run for Lee before these petitions were filed.

Lee asserts that, contrary to Magistrate Judge Rapoport's conclusion, the limitations period governing his petition should be equitably tolled due, apparently, to his efforts to pursue his case. The one-year limitation set by section 2244(d) is "subject to equitable tolling in appropriate cases." Holland v. Florida, 130 S. Ct. 2549, 2560 (2010); LaCava v. Kyler, 398 F.3d 271, 275 (3d Cir. 2005). The Third Circuit has "cautioned, however, that courts should be sparing in their use of this doctrine, applying equitable tolling only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." LaCava, 398 F.3d at 275-76 (quotation marks and citation omitted). To be entitled to equitable tolling a state prisoner must demonstrate (1) "reasonable diligence in attempting to investigate and bring his claims" and (2) extraordinary circumstances preventing his timely filing. Id.; see also Holland, 130 S. Ct. at 2562. A state prisoner may

-12-

not rely on "[m]ere excusable neglect" as a basis to apply equitable principles. LaCava, 398 F.3d at 275-76. The obligation to exercise "reasonable diligence" applies to both the filing of the federal habeas petition and state prisoner's exhaustion of state court remedies. Jones v. Morton, 195 F.3d 153, 160 (3d Cir. 1999).

Even giving the facts asserted a liberal construction, Lee has not pursued his claim diligently. In examining Lee's due diligence, Magistrate Judge Rapoport took the several year gap between Lee's conviction and the filing of the PCRA petition that resulted in a reinstatement of appellate rights as indicative that Lee had sat on his hands. (R & R at 7.) While the Superior Court did recognize the failure to file a direct appeal to be an instance of ineffective assistance of counsel, Lee offers no explanation for the delay in filing the PCRA petition which obtained that result. Lee similarly fails to account for the fourteen-month delay between the Superior Court's decision upon direct appeal, which instructed Lee to bring a request for post-conviction DNA testing as a PCRA petition, and Lee's PCRA petition seeking that relief.

Lee does assert in his objections to the R & R that he has "filed numerous writs which were returned to him undocketed by the courts." (Objections at 2.) The record fails to reflect any evidence of these documents, much less any basis for concluding that any one of these petitions was filed within one year of the final judgment of conviction. (Objections at 2.) Granted, Lee does assert that many of his records have been lost. (Objections at 2.) Nonetheless, Lee alludes specifically to only one instance of a failed attempt to file -- a PCRA petition that Lee asserts he filed in February 2005 and discovered

one year later had not been received by the Court of Common Pleas.[3] (Objections at 2; <u>see also</u> 7/27/05 Mot. to Withdraw as Counsel for Def. at ¶ 4.) Had it been received, this habeas petition would still have been filed over one year after the January 27, 2004 hearing on the DNA evidence, at which Lee's attorney engaged in the conduct to which Lee objects. Even had that petition been successfully docketed, it alone could not establish Lee's due diligence.

Further, nothing in Lee's petition or objections to the R & R supports a finding of extraordinary circumstances to excuse the delay between his judgment of conviction and the filing of his first PCRA petition. In general, the Third Circuit has declined to find "attorney error, miscalculation, inadequate research, or other mistakes" in non-capital cases to rise to the level of extraordinary circumstances. <u>Fahy v. Horn</u>, 240 F.3d 239, 244 (3d Cir. 2001). Egregious lapses in professional responsibility that exceed "a garden variety claim of excusable neglect," may constitute extraordinary circumstances, especially in the face of a petitioner's diligent efforts to ensure the attorney's compliance. <u>See</u> <u>Holland</u>, 130 S. Ct. at 2564; <u>Nara v. Frank</u>, 264 F.3d 310, 320 (3d Cir. 2001), <u>overruled on other grounds by</u> <u>Carey v. Saffold</u>, 536 U.S. 214 (2002). However, as a general rule, "an attorney's failure to file a notice of appeal does not constitute the type of extraordinary or rare circumstances making it impossible for a defendant to timely file his or her [habeas]

---

[3]Lee's objections also refer to a failed attempt to submit a writ of mandamus, but offers no details as to the substance or timing of that writ. (Objections at 2.) Lee's April 20, 2006 PCRA petition also refers to an undocketed petition for habeas relief "filed in 2005 on aggravated assault and indecent conduct[,]" but Lee has provided no other information about this petition. (4/20/06 PCRA Pet., Ex. H at 4.)

petition." Cookman v. Barone, No. 08-4980, 2010 WL 331705, at *5 (E.D. Pa. Jan. 26, 2010).

Lee implies in his objections to the R & R that attorney misconduct prevented him from timely filing this habeas petition. The Superior Court did conclude that Lee received ineffective assistance of counsel when counsel failed to file a direct appeal from Lee's conviction. See Lee, No. 3417 EDA 1999 (Ex. C at 4.). Nevertheless, Lee has not shown that counsel's error in any way prevented his timely filing of a habeas petition, much less an error rising to the level of an extraordinary circumstance. In fact, the Superior Court remedied counsel's error by reinstating Lee's appeal rights nunc pro tunc, resulting in a delay of Lee's judgment of conviction until conclusion of that appeal. It was only at this point that the AEDPA statute of limitations began to run. Thus, even had Lee's counsel engaged in truly egregious misconduct, it had no bearing on Lee's delay in filing a first PCRA petition as the Superior Court's decision negated the effect of counsel's error.

Nor can Lee point to the loss of his legal materials as an alternative basis for relief. A state prisoner cannot assert as extraordinary "generalized allegations of restricted access to legal resources," McKeithan v. Varner, 108 Fed. App'x 55, 59 (3d Cir. 2004); see also Robinson v. Johnson, 313 F.3d 128 (3d Cir. 2002) (considering as relevant to equitable tolling, (1) length of time petitioner was deprived of legal papers; (2) whether papers were confiscated while petitioner was drafting the petition; (3) whether petitioner relied on the papers in preparing a petition; and (4) whether petitioner sought to file a timely petition despite the deprivation and then clarify it once the materials were recovered.). Although Lee's boxes of legal materials may have been lost by prison officials, Lee has asserted no

facts to conclude that materials were withheld, that prison officials actively curtailed him from pursuing collateral review of his convictions, or that Lee was personally engaged in preparing or filing a petition when the boxes were lost. Thus, this Court concludes that Lee is not entitled to equitable tolling.

**B.**    **Ineffective Assistance of PCRA Counsel**

This Court agrees with Magistrate Judge Rapoport that Lee's claim of ineffective assistance of PCRA counsel is not cognizable on habeas review. Lee claims that the refusal of his PCRA counsel to pursue a new trial on his aggravated assault conviction based on new DNA evidence constituted ineffective assistance and a denial of his "constitutional right to assert his innocence at all levels." (Objections 3.)   As there is no constitutional right to the assistance of counsel in post-conviction collateral proceedings, ineffective assistance in a PCRA proceeding can not give rise to a Constitutional violation. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Tillet v. Freeman, 868 F.2d 106, 108 (3d Cir. 1989) (holding a claim of ineffective assistance of PCRA counsel to be "at most one arising under Pennsylvania law[,] but not cognizable under the Constitution or laws of the United States").   Section 2254(i) of AEDPA explicitly precludes a prisoner from asserting "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings" as ground for relief on habeas review. Since these claims are not cognizable in a federal habeas petition, this Court denies relief.

**VI.**    **Conclusion**

For the reasons stated above, the Court will adopt the R & R and deny the Petition for Writ of Habeas Corpus. The Court has concluded that there is no basis for the issuance

-16-

of a certificate of appealability.  An appropriate Order follows.

O:\CIVIL 09-10\Lee v. PA Board 09-2825\Lee v. PA Board - 2254 Habeas Memorandum 09-2825.wpd